ROBERTSON, Justice:
Franklin Pace was indicted for the murder of his wife, Nadine Pace, and tried by the Circuit Court of Prentiss County, Mississippi. The jury found him guilty of manslaughter and the court sentenced him to serve a term of fifteen years in the Mississippi State Penitentiary.
Pace testified at the trial that the shooting was accidental. He contends in this Court that, inasmuch as he was the only eyewitness and his version was reasonable, the Weathersby rule should have been applied and the jury instructed to find for the defendant.
In Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), this Court announced the rule of evidence which has come to be known as the Weathersby rule:
“It has been for some time the established rule in this state that where the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be *695 accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.” 165 Miss. at 209, 147 So. at 482 (Emphasis added).
At the trial, Pace testified that he was unemployed and had been out of work for three weeks; that on April 18, 1969, he went by Prentiss Manufacturing Company where his wife worked and they went out to lunch together; that he borrowed $5.00 from her, and shortly thereafter purchased a quart of white whiskey for $3.00. During the afternoon he drank a small Coca-Cola bottle of the whiskey and brought the half-gallon fruit jar containing the remaining whiskey home with him and placed it on the kitchen table.
Around 4:30 P.M., while he was cutting a little firewood, his wife, Nadine, returned from work. Pace built a little fire in the living room, and he and his wife began discussing unpaid bills, which Pace testified they were both worried about. He had a female dog under . the house which was attracting other dogs, and he told his wife:
“Well,»I just as well go out and shoot that dog, because they are going to keep making racket, and can’t get no sleep.”
According to Pace, his wife replied: “Just shoot at them.” He went in the kitchen and took the rifle down from over the kitchen-bedroom door. Pace continued his testimony:
“I reached and got the rifle and when I turned around, the gun hit the table and went off, and I looked up and my wife was standing in the door coming out of the livingroom into the kitchen, and she had started to fall, and I threw the rifle down, and I am not for certain—
“Q Do you know how the trigger was pulled ?
“A I never had my hand near the trigger.” [Emphasis added].
The bullet hit Mrs. Pace in the right cheek and lodged in the middle of her head. She died in the ambulance on the way to a Tu-pelo hospital.
The examining doctor testified that the shot entered her right cheek and lodged in her head. The embalmer testified:
“She had a bullet wound under her right eye.
“Q All' right, sir, Mr. Waters, the wound under her right eye, was it away from her nose ?
“A Yes, sir, I would say a half to three-quarters of an inch away from the nose.
“Q Did you probe the wound ?
“A Yes, sir, I did.
“Q From your examination of the body, Mr. Waters, from what angle did the bullet come from, in your opinion ?
“A The bullet came from the right and went into the center part of the head.
“Q At approximately what angle did it enter the skull, Mr. Waters? Was it going up or down or how ?
“A It was almost on a straight line.” [Emphasis added].
If, as the defendant testified, he took down the rifle from above the doorway from the bedroom to the kitchen and the gun went off accidentally when it hit the kitchen table hitting Mrs. Pace as she stood in the doorway from the living room into the kitchen, the only possible place that she could have been hit would have been in the left cheek because the entrance from the bedroom to the kitchen was on the left side of the entrance from the living room into the kitchen. This was a substantial contradiction “by the physical facts.”
Defendant also testified that the gun was usually not cocked. He couldn’t ex *696 plain why it was cocked on this occasion when he took it down from the doorway leading from the bedroom into the kitchen.
. Defendant testified that he never touched the trigger and that the gun went off accidentally when it hit the kitchen table. Sheriff Wachsman testified that he cocked the rifle and hit it on a table several times to see if it would go off, and that even though he broke the stock it never did go off. The only way he could make the rifle fire was to squeeze the trigger in a normal manner.
Farris Moody, a nextdoor neighbor, testified that he saw the defendant and his wife struggling or scuffling in the front yard shortly before she was shot, and that Mrs. Pace broke away from the defendant and ran into the house. Defendant testified that all was sweetness and light between them. It appears to us that the defendant’s testimony did not quite ring true when he stated under oath. that, even though he was unemployed, borrowed $5.00 from his wife and spent it on whiskey, that both were worried about unpaid bills and were discussing these at the time of the shooting, all was sweetness and light between them. Normal human behavior, within the common knowledge of each one of us, is just not that way.
The normal human reaction would probably have been for the wife to be upset with her unemployed husband who had borrowed money from her and spent it for whiskey when they needed to apply everything that they could rake and scrape together on unpaid bills.
In overruling defendant’s motion for a directed verdict, the trial judge stated:
“Well, of course, Mr. Lacey, the Court, in ruling on your motion is aware of the so-called Weathersby Rule, where the defendant is the only eyewitness to a homicide, his version must be accepted, unless it is eventually contradicted in material particulars by several witnesses, physical facts, or facts commonly known. The Court is of the opinion that even though the defendant in this instance was the only eyewitness, substantial facts have been developed by credible witnesses which cast doubt upon the version given by him, therefore, the Court feels that this is a question for the jury, question of fact for the jury to pass on. Motion for directed verdict is overruled.”
We agree with the trial court that the version of the defendant was substantially contradicted in material particulars by the testimony of credible witnesses, by the physical facts, and “by the facts of common knowledge”, and that the guilt or innocence of the defendant was a question for the jury to decide.
The conviction and sentence are, therefore, affirmed.
Affirmed.
GILLESPIE, C. J., and SMITH, SUGG and BROOM, JJ., concur.